Gary MATHEWS, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–86–346–CR.

Court of Appeals of Texas, Corpus Christi.

Feb. 19, 1987.

James R. Lawrence, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

Appellant was charged with attempted murder, found guilty by a jury of the lesser included offense of aggravated assault, and assessed a punishment of eight years' imprisonment and a $5,000 fine. Appellant advances two grounds of error on appeal. The sufficiency of the evidence is not challenged. We affirm.

In his first ground of error, appellant complains of the trial court's failure to submit to the jury an instruction on self-defense. In order to justify the submission of an instruction to the jury on the issue of self-defense, there must be some evidence in the record to indicate that the defendant was in some apprehension or fear of suffering from the unlawful use of force by the victim. *Smith v. State*, 676 S.W.2d 584, 585 (Tex.Crim.App.1984). If the evidence raises the issue of self-defense, a defendant is entitled to an instruction on it, regardless of the weight or credibility of this evidence. *Dyson v. State*, 672 S.W.2d 460, 463 (Tex.Crim.App.1984). The defendant's testimony alone may be sufficient evidence to require such an instruction. *Dyson*, at 463; *Warren v. State*, 565 S.W.2d 931, 934 (Tex.Crim.App.1978).

Appellant testified that on the evening in question he and his girlfriend went to a bar. Around 1:30 a.m., he went to the restroom, passing the victim, Pat Reiss, and another man who were on their way out of the bar. Appellant stated that Reiss and his companion picked a fight with him. Appellant had never met Reiss before. Appellant stated, "they just started telling me all this stuff that—that they were going to beat me up and this and that and the other

thing, then they left." Appellant also said, "I was just telling them to leave me alone, you know. They said they was going to do it. I said, 'Well, let's do it.' Then they kept off [sic] smarting their mouth off and left." Appellant admitted that there had been no pushing or shoving during the alleged altercation.

Appellant reported to the bartender that two people had been giving him "some trouble." As appellant left the bar at closing time, he asked the bouncer to go outside and check to see if it was safe for him to leave. The bouncer complied. Appellant stated, "I just wanted to go to the party I was suppose to go to, without any trouble, without having to fight two dudes." He admitted saying something to the effect "that if these two dudes mess with me that I'd shoot them."

Appellant and his girlfriend left the bar and went to his car. He testified:

I unlocked my door and I looked over and there were these two fellows standing over there looking at me. I knew it was him ... and I yelled to him "Do you still want some more shit?" And they just kept looking at me and I unlocked my car and got my gun out.... They just stood there and they were by [their car] door and he [victim] walked to the back of his car and I got my gun out of the back of the floorboard and walked over there to where he was ... I hit him about three times in the waste [sic] with the butt of the gun ... I started to walk back towards the car but I had to keep my eye on him ... He started to come at me and I turned around and he—he grabbed that barrel and ... the safety must have clicked off ... and he grabbed that barrel and he pulled that barrel and it went

... he pulled it ... and it just went off ... It shot him.

The record reflects that appellant's gun was a 30–aught six hunting rifle and that appellant knew that it was loaded and cocked. He stated that when he got to his car he thought the two men were waiting for him. Appellant admitted on cross-examination that neither Reiss nor his companion said anything to him outside of the bar, nor did they make any physical act of aggression towards him. He also admitted that, while outside the bar, Reiss gave him no provocation to pull out a loaded rifle, "[o]ther than him standing there staring...."[1]

■ There can be no doubt that appellant's use of the rifle amounted to the use of deadly force, as appellant knew it was capable of causing death or serious bodily injury. Tex.Penal Code Ann. § 9.01(3) (Vernon 1974). Appellant would only be justified in the use of deadly force if he reasonably believed deadly force was immediately necessary to protect himself against the use of unlawful deadly force, and if a reasonable person in that situation would not have retreated. Tex.Penal Code Ann. § 9.32 (Vernon Supp.1987). Even accepting appellant's testimony as true, we do not find that this evidence raises an issue of self-defense. Appellant's use of deadly force cannot be considered by any stretch of the imagination to have been immediately necessary to protect himself against the unlawful use of deadly force.

Appellant testified Reiss made verbal threats of bodily harm against him inside the bar earlier that evening. Further, he said that he broke off his attack on Reiss and started back towards his car when Reiss "came at" him, and they began to

---

1. The victim's version of the incident differs from appellant's. He said he noticed appellant and his girlfriend enter the bar because they were arguing, but that while he was there he did not speak to appellant or have any contact with him. Reiss and his companion then went to another bar across the street until closing time and, upon returning to his car, Reiss again noticed appellant arguing with his girlfriend. They were standing next to a car which was parked near his. Appellant began yelling at

him, and suddenly came up behind him and hit him repeatedly with his rifle. Appellant pointed the rifle at him and Reiss used his hands in an attempt to keep the rifle barrel in the air. Appellant fired the rifle which hit Reiss, severely injuring his arm. Reiss testified that neither he nor his companion displayed a weapon or even possessed one, never made any aggressive moves toward appellant, and never said anything to him.

struggle for the rifle.[2] However, appellant also testified that Reiss was unarmed and made no verbal threats or aggressive moves toward him outside the bar. Reiss and his companion were only standing by their car staring at appellant. Even if Reiss had previously made verbal threats to appellant, appellant could not have had any reasonable apprehension of deadly force or even of unlawful force.

■ Without evidence of the use or attempted use of deadly force by the victim, the statutory defense provided in Section 9.32 is not available and no instruction was needed. *Werner v. State*, 711 S.W.2d 639, 644 (Tex.Crim.App.1986); *see also Bray v. State*, 634 S.W.2d 370, 373 (Tex.App.—Dallas 1982, no pet.). There is also nothing in the record to show that a reasonable person in this situation would not have retreated or, in this case, continued the retreat. The record does not indicate that appellant's movement was restricted. On the contrary, appellant's car was parked nearby. *See Ogas v. State*, 655 S.W.2d 322, 324 (Tex.App.—Amarillo 1983, no pet.). As the evidence in this case does not raise the issue of self-defense, the trial court did not err in refusing to submit the defensive instruction. Ground of error one is overruled.

■ In his second ground of error, appellant argues that the trial court committed reversible error by instructing the jury on the law of parole in accordance with Tex. Code Crim.Proc.Ann. art. 37.07 (Vernon Supp.1987). Appellant cites *Rose v. State*, No. 5–85–1136–CR (Tex.App.—Dallas, August 11, 1986), as his only authority. However, that opinion has been withdrawn by the Dallas Court of Appeals and substituted by an opposite opinion. *Rose v. State*, 724 S.W.2d 832 (Tex.App.—Dallas, 1986, pet. pending). In fact, this Court has recently rejected this precise contention in *Zaragosa v. State*, 721 S.W.2d 429 (Tex. App.—Corpus Christi, 1986 no pet.); *see also Casares v. State*, 712 S.W.2d 818, 821 (Tex.App.—Houston [1st Dist.] 1986, no

pet.). We also note that appellant failed to object to the submission of this charge to the jury. As such it was waived. Ground of error two is overruled.

There being no reversible error, the judgment of the trial court is AFFIRMED.

---

2. In her testimony, appellant's girlfriend did corroborate appellant's claim that, after he had hit Reiss with the butt of the rifle, he broke off the attack and turned to walk away when Reiss "grabbed the barrel of the gun and the gun went off twice."