

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-19-00351-CR

CHRISTOPHER JONES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 85th District Court
Brazos County, Texas[1]
Trial Court No. 18-03126-CRF-85, Honorable Kyle Hawthorne, Presiding

August 18, 2020

MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant, Christopher Jones, was convicted of aggravated assault with a deadly weapon following a jury trial.[2] The jury assessed appellant's punishment at twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal

---

[1] Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

[2] TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2019).

Justice. By his sole issue, appellant challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claim. We affirm the judgment of the trial court.

## Background

On April 23, 2018, appellant stabbed David Bishop with a butcher knife in the bathroom of appellant's trailer. Appellant and Bishop were the only people present at the time of the stabbing. Appellant was indicted for aggravated assault with a deadly weapon. At trial, appellant testified that his actions were justified in defending himself against Bishop's attempt to cut him with a tomahawk.

Bryan Police Officer Ron Stautzenberger responded to a 9-1-1 call concerning a stabbing at the Greenbriar Acres Mobile Home Park. When the officer arrived, Bishop was sitting in a chair outside the front office. Bishop told the officer that appellant, his roommate, stabbed him in the arm and on the left side of his chest. Bishop had a towel wrapped around his left arm to control the bleeding. He was treated at the emergency room and hospitalized for his injuries.

Bishop, sixty-five years old, and appellant, thirty-two years old, had been roommates for three weeks. On the day of the attack, Bishop and appellant were riding around in Bishop's car. Bishop told appellant that he was planning to move to Austin and appellant "had a very strange reaction" to that news. According to Bishop, it "[s]eemed like [appellant] went into a trance."

When the men returned to appellant's trailer, Bishop went into the bathroom. After Bishop finished in the bathroom, he opened the door and saw appellant standing partly in the doorway. Appellant was holding a butcher knife in his right hand. Bishop said,

2

"What's up with this?"  Appellant said, "I'm going to kill you, motherfucker."  Then, appellant stabbed Bishop twice.  Appellant charged Bishop and pushed him backwards into the bathtub.  As Bishop landed, he kicked appellant in the chest with his foot.  Bishop testified that he did not think that he would get out of the bathroom alive.  Appellant got up and said, "Get out of my house, you motherfucker.  You come back in my house and I will kill you."  Bishop left the trailer and called 9-1-1 as he walked to the management office at the front of the trailer park.  Appellant threw the knife in the kitchen sink and went outside to wait for the police.

Officer Stautzenberger secured the scene.  He noticed blood on appellant's clothing, but he had no visible injuries.  There was blood outside of the trailer on the porch.  When he opened the door to the trailer, he saw droplets of blood that led from the doorway, down the hallway, and into the bathroom.  The bathroom had quite a bit of blood in it.  He found a bloody knife in the kitchen sink.  According to the officer, the knife appeared to have been rinsed with water.

There was a trail of blood outside the trailer which led to the front office.  Bishop's car was parked outside of the trailer with the windows rolled down.  Police found a hatchet in the floorboard behind the passenger seat.[3]  There was no blood on the hatchet, or on the inside or outside of the car.  Bishop acknowledged that he had a "tomahawk" in his car, which he used for camping and as a self-defense tool.  He also had a set of brass knuckles in a tote bag in his bedroom.  He denied having either of those items on his

---

[3] Police referred to the tool as a hatchet.  Bishop and appellant referred to the tool as a tomahawk.

3

person when appellant attacked him. And he denied threatening appellant on the day of the attack.

Police detective Matthew Miller interviewed appellant at the scene. He noted that appellant had a superficial laceration on one of his fingers on his right hand. Miller characterized the laceration as an offensive wound, consistent with appellant's hand slipping over the handle of the knife onto the blade and cutting himself. Appellant told the detective that Bishop threatened to "get his brass knuckles and tomahawk to kill [him]." According to Miller, appellant did not tell the police that Bishop had a weapon in his hands at the time of the attack. Miller did not believe that the hatchet had been used in the altercation because of the lack of blood on it or in the car. According to the detective, a bloody imprint on appellant's shirt was consistent with Bishop's version of the events as he pushed appellant away with his foot when he fell in the bathtub.

At trial, appellant testified that he acted in self-defense. On the day of the incident, appellant and Bishop were riding around in Bishop's car. Bishop bought appellant a beer at a convenience store and then they returned to the trailer. Appellant went to his room while Bishop made breakfast. After they finished eating, appellant said Bishop threatened to kill him with his tomahawk. Appellant told the jury that he feared for his life because Bishop always carried weapons. Appellant had seen Bishop's knives, brass knuckles, and the tomahawk. After making that statement to appellant, Bishop went into the restroom. Appellant grabbed the butcher knife to protect himself and waited outside the restroom door. When Bishop came out of the bathroom, he had a tomahawk in his right hand and he raised it at appellant. Appellant grabbed Bishop's arm to block it and then he stabbed Bishop twice trying to defend himself. Bishop fell back and appellant fell

4

forward.  Then, appellant got up and told Bishop to get out.  Appellant does not recall Bishop kicking him with his foot.  Appellant claimed that Bishop left the trailer carrying the tomahawk in his right hand.

A jury convicted appellant of aggravated assault with a deadly weapon and sentenced him to twenty-five years' confinement.  Appellant timely filed this appeal.

Analysis

Sufficiency of the Evidence and Assertion of Self-Defense

By his appeal, appellant presents a single issue.  Appellant does not challenge the evidence establishing that he was the person who inflicted the life-threatening injuries on Bishop.  Instead, he challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claim.

The standard we apply in determining whether the evidence is sufficient to support a jury's rejection of self-defense is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).  Under that standard, we consider all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and against the appellant on the self-defense issue beyond a reasonable doubt.  *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018).  At trial, an accused has the initial burden of producing some evidence to support a claim of self-defense.  *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)

5

(en banc)).  Once evidence is produced, the burden shifts to the State to disprove the defense beyond a reasonable doubt.  *Saxton,* 804 S.W.2d at 913.  This burden of persuasion does not require the State to produce evidence to refute the self-defense claim but requires only that it prove its case beyond a reasonable doubt.  *Id.* at 914.  A jury's guilty verdict is an implicit rejection of the appellant's self-defense claim.  *Id.*

A defendant commits the offense of aggravated assault with a deadly weapon if the defendant commits assault as defined in Penal Code section 22.01 and uses or exhibits a deadly weapon during the commission of the assault.  *See* TEX. PENAL CODE ANN. § 22.02(a)(2).[4]  A defendant commits assault under section 22.01 if the defendant "intentionally, knowingly, or recklessly causes bodily injury to another."  *Id.* § 22.01(a)(1) (West Supp. 2019).  A knife is a deadly weapon.  *See id.* § 1.07(a)(17)(B) (West Supp. 2019).

Self-defense is the use of force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. § 9.31(a) (West 2019).  The reasonableness of an actor's belief that force was required to defend himself is viewed from the actor's standpoint at the time he acted.  *Juarez v. State*, 886 S.W.2d 511, 514 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).  The issue of self-defense is a fact issue to be determined by the jury, and a jury is free to accept or reject the defensive issue, even if the evidence is uncontroverted.  *Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex.

---

[4] Further references to provisions of the Texas Penal Code will be by reference to "section __" or "§ __."

Crim. App. 1994) (en banc); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992) (en banc).

In his sole issue, appellant argues the evidence is insufficient to support his aggravated assault with a deadly weapon conviction because no rational jury could have found against him on his claim of self-defense. Specifically, appellant contends that Bishop's threat, the knowledge that Bishop had the weapons he threatened to use, and the use of a hatchet by Bishop upon opening the bathroom door, shows he reasonably believed force was immediately necessary to protect himself against Bishop's attempted use of unlawful force. Appellant, however, relies entirely on his own version of events and ignores conflicting evidence, which supports the jury's rejection of his justification defense.

The jury heard testimony from Detective Miller, on the day of the altercation, that he asked appellant "several times" if Bishop had a weapon in his hands and appellant replied, "no." Bishop testified that after appellant attacked him with the knife, he kicked appellant in the chest, yet appellant did not recall being kicked. Investigating officers matched the bottom of Bishop's left shoe with a blood transfer on the shirt worn by appellant. There was also testimony that after the struggle with appellant, Bishop was bleeding profusely and left a trail of blood from the bathroom to the front office of the mobile home park. But the hatchet was found in the rear passenger seat floorboard of Bishop's car and it did not have any blood on it and there was no blood inside the car.

The jury was free to reject appellant's version of events as self-serving. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995) (en banc) (jury is the sole judge of the weight of the evidence and may choose to believe all, some, or none of it); *Denman*

7

*v. State*, 193 S.W.3d 129, 132-33 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (jury not required to accept defendant's self-defense theory that was supported solely by his own testimony).

The jury, charged with resolving the conflicts in the evidence, was free to conclude appellant was the aggressor, that he was not justified in using force, and that his use of force was not immediately necessary to protect himself. *See* § 9.31(a). Considering all the evidence in the light most favorable to the verdict, we conclude the jury could have rationally found beyond a reasonable doubt that appellant, using a deadly weapon, intentionally, knowingly, or recklessly caused bodily injury to Bishop and rejected appellant's claim of self-defense. *Gaona v. State*, 498 S.W.3d 706, 710 (Tex. App.—Dallas 2016, pet. ref'd). Accordingly, we overrule appellant's sole issue.

Conclusion

Having overruled appellant's issue, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.